**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| HOMEVESTORS OF AMERICA, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:26-cv-594 |
| | § | |
| Or Chris Kirshenboim; Chris Buys Homes in Kansas City; KI Properties Solutions, LLC; ZRE, Inc.; | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

---

**COMPLAINT**

---

Plaintiff HomeVestors of America, Inc. ("HomeVestors"), the We Buy Ugly Houses® people, files this Complaint against Defendants Or Chris Kirshenboim, Chris Buys Homes in Kansas City, KI Properties Solutions LLC, and ZRE, Inc. for breach of contract, trademark infringement, trademark dilution, false designation of origin, and unfair competition.

## I. PARTIES

1. Plaintiff HomeVestors is a Delaware corporation with its principal place of business in Dallas, Texas.

2. Defendant Or Chris Kirshenboim ("Kirshenboim") is an individual who resides in California.

3. Defendant Chris Buys Homes in Kansas City ("Chris Buys Homes") is a Missouri nosiness with its principal place of business at 11232 Jackson Avenue, Kansas City, Missouri, 64137.

4. Defendant KI Properties Solutions LLC ("KI Properties") is a California limited liability company with its principal place of business at 1990 N. California Blvd., Floor #8, Walnut Creek, California 94596.

5. Defendant ZRE, Inc. ("ZRE", collectively with the other defendants, the "Defendants") is a Wyoming corporation with its principal place of business in Walnut Creek, California.

## II. JURISDICTION AND VENUE

6. This is an action for trademark infringement and unfair competition arising under 15 U.S.C. §§ 1114 and 1125(a). Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338. The Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367.

7. Defendants are subject to personal jurisdiction in this district and venue is proper in this district because they have consented to jurisdiction in this Court in the Confidential Settlement Agreement and Release signed April 21, 2021.

## III. FACTUAL BACKGROUND

### A. HomeVestors' Trademark Rights

8. HomeVestors is the largest homebuyer in the United States. Since its founding in 1996, HomeVestors' network of approximately 1,000 independently owned and operated franchises has purchased over 150,000 homes throughout the United States. HomeVestors'

franchisees, who are located in 47 states and the District of Columbia, build businesses based on buying, rehabbing, selling, and holding residential properties.

9. Known as the We Buy Ugly Houses® people, HomeVestors strives to make a positive impact in each of its over 175 markets. In January 2025, HomeVestors was ranked on Entrepreneur's annual Franchise 500 list. HomeVestors was listed on the 2021 Inc. 5000, and has been listed on the prestigious Franchise Business Review's List of Top Franchises 11 times. In 2020, Franchise Times ranked HomeVestors 94th on its Top 200 Franchise Chains by Worldwide Sales. And, HomeVestors recently received a Top Overall Franchise Award from FranchiseHelp, the world's largest independent information resource for prospective franchisees.

10. HomeVestors' franchisees often renovate the houses they purchase before selling or renting them to others. Consequently, since at least 2000, HomeVestors has used the mark WE BUY UGLY HOUSES in connection with its franchising and real estate services.

11. HomeVestors is also the owner of more than thirty United States Trademark Registrations for its UGLY family of marks (collectively, the "UGLY HOUSES marks"), including:

| MARK | REG. NO. |
|---|---|
| WE BUY UGLY HOUSES | 3,099,814<br>(Incontestable) |
| WE BUY UGLY HOUSES | 2,999,705<br>(Incontestable) |
| WE BUY UGLY HOUSES | 5,467,581 |
| WE SELL UGLY HOUSES | 4,638,341<br>(Incontestable) |

| MARK | REG. NO. |
|---|---|
| I ❤ UGLY HOUSES. | 4,881,433<br>(Incontestable) |
| #WEBUYUGLYHOUSES | 5,297,521 |
| I BUY UGLY HOUSES | 6,259,085 |
| SELL US YOUR UGLY HOUSE | 5,919,522 |
| WE BUY HOUSES, THE GOOD, THE BAD AND THE UGLY | 5,919,520 |
| WE BUY HOUSES, UGLY OR NOT | 5,919,518 |
| WE BUY UGLY HOUSES.COM | 5,560,021 |
| UGLY HOUSE? | 5,172,916<br>(Incontestable) |

12. Among HomeVestors' federal registered UGLY HOUSES marks are WE BUY UGLY HOUSES (U.S. Reg. Nos. 2,761,385; 2,999,705; 3,099,814; 5,297,521; 5,560,021; 5,467,581), WE BUY HOUSES, THE GOOD, THE BAD AND THE UGLY (U.S. Reg. No. 5,919,520)), UGLY HOUSE? (U.S. Reg. No. 5,172,916), WE BUY HOUSES, UGLY OR NOT (U.S. Reg. No. 5,919,518), and UGLY HOUSE? (U.S. Reg. No. 5,172,916). *See* Certificate of Registrations attached hereto as **Exhibit A** and incorporated by reference.

13. As noted above, many HomeVestors registrations for the UGLY HOUSES marks have become incontestable and constitute conclusive evidence of the validity of the marks, HomeVestors' ownership of the marks, and its exclusive right to use the marks.

14. HomeVestors and its franchisees invest significant amounts of time, money, and energy into promoting HomeVestors' services under the UGLY HOUSES marks. In just the last 10 years, HomeVestors has spent over $500 million on advertising and promoting the HomeVestors brand using the UGLY HOUSES marks.

15. Only HomeVestors and its independently owned and operated licensed franchisees have the right to use HomeVestors' UGLY HOUSES marks.

16. HomeVestors' franchisees advertise their real estate-related services through print media, billboards, the Internet, social media, and on television and radio. The annual advertising expenditure routinely exceeds $85 million.

17. As a result of the extensive advertising and sales, the UGLY HOUSES marks enjoy significant goodwill among relevant consumers.

18. Due to the longstanding use, extensive advertising, and widespread recognition among the consuming public, HomeVestors' WE BUY UGLY HOUSES mark, as well as HomeVestors' other UGLY HOUSES marks, have become famous.

**B. <u>Defendants' Wrongful Acts</u>**

19. Defendants are not licensed HomeVestors franchisees, nor do they have any current affiliation with HomeVestors. Consequently, Defendants are not permitted to use any of the UGLY HOUSES marks to promote their real estate services.

20. Defendants are also direct competitors with HomeVestors in the buying and selling of houses.

21. Defendants have used and continue to use the UGLY HOUSES marks or similar variations to advertise their real estate services as explained below.

22. Defendants have improperly used the UGLY HOUSES marks in connection with their real estate services, including in sponsored advertisements linking to their websites as depicted below:










23. Defendants' use of the UGLY HOUSES marks to advertise their real estate services without permission to do infringes on HomeVestors UGLY HOUSES marks.

24. On information and belief, the advertisements for Chris Buys Homes are placed by ZRE.

25. Defendants' conduct also confuses and deceives consumers into believing that Defendants are affiliated with HomeVestors. Defendants' intent to confuse consumers (1) harms HomeVestors' reputation, (2) misappropriates business opportunities and profits intended for HomeVestors and its franchisees, (3) dilutes HomeVestors' famous marks, and (4) drives up advertising costs for HomeVestors.

26. Upon information and belief, there has been actual confusion caused by Defendants' unauthorized use of the UGLY HOUSES marks. For example, a google search for "homevestors" results in sponsored links to Chris Buys Homes in KC's website, which uses the WE BUY UGLY HOUSES mark when Chris Buys Homes in KC is in no way related to HomeVestors and is not permitted to use this mark.




## C. Defendants Have Willfully and Intentionally Infringed Upon HomeVestors' Marks.

27. The above references are not the only time that Kirshenboim and companies related to him have used HomeVestors UGLY HOUSES marks to advertise real estate services.

28. Back in 2021, Kirshenboim used the UGLY HOUSES marks and HomeVestors caveman mascot, UG, to advertise his services in St. Louis, Missouri:




29. Counsel for HomeVestors sent Kirshenboim a cease and desist letter in 2021. This letter included an offer of settlement to Kirshenboim in an attempt to prevent the necessity of a lawsuit.

30. In response to HomeVestors' cease and desist letter, Kirshenboim signed a settlement agreement with HomeVestors which acknowledged that he could not use the UGLY HOUSES marks and would cease using any use of the Licensed Marks or confusingly similar marks, which includes the UGLY HOUSES marks. The Confidential Settlement Agreement and Release signed April 21, 2021 ("2021 Settlement Agreement") is attached hereto as **Exhibit B**.

31. However, even after agreeing to "permanently cease any use of the [UGLY HOUSES marks] (or confusingly similar marks)" in the 2021 Settlement Agreement, Kirshenboim

continued to use the UGLY HOUSES marks to advertise his real estate business, as described above.

32. On September 16, 2025, Counsel for HomeVestors sent Kirshenboim another cease and desist letter requesting that he and his companies, Chris Buys Homes, KI Properties, and ZRE, immediately cease all infringement of HomeVestors' UGLY HOUSES marks. This letter also included an offer of settlement to Kirshenboim in an attempt to prevent the necessity of a lawsuit.

33. On September 16, 2025, a second settlement agreement was executed by Kirshenboim wherein he agreed "to stop using HomeVestors' IP and any confusingly similar variations of HomeVestors IP within thirty (30) days." This settlement agreement ("2025 Settlement Agreement") is attached hereto as **Exhibit C**.

34. Despite repeated warnings and multiple promises not to infringe HomeVestors' trademarks, Defendants have continued to purposefully infringe HomeVestors' UGLY HOUSES marks in order to trade off of the goodwill that HomeVestors and its franchisees have developed.

35. Defendants do not have a license to use HomeVestors' UGLY HOUSES Marks. Defendants' actions have injured, and if permitted to continue, will irreparably injure HomeVestors, its franchisees, the HomeVestors UGLY HOUSES marks, the goodwill associated with those marks, and HomeVestors' reputation for quality services in the following ways:

(a) Defendants have knowingly, willfully, and/or intentionally acted in a manner that is likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, authorization, or affiliation of Defendants' real estate services;

(b) Defendants have deliberately interfered with and damaged, and will continue to damage HomeVestors' relationship with customers, potential customers, and users of HomeVestors' services and other products; and

(c) Defendants' actions have harmed HomeVestors' reputation and goodwill.

36. HomeVestors has no adequate remedy at law for many of these injuries, and thus

seeks injunctive relief to end the continuing wrongful acts of Defendants.

## IV. CLAIMS FOR RELIEF

### A. COUNT I: Breach of Contract against Kirshenboim

37. HomeVestors realleges and incorporated by reference the allegations set forth in all proceeding paragraphs.

38. HomeVestors has performed all of its obligations under the Settlement Agreement, and all conditions precedent to Defendants' performance have been performed, will be performed, or have been waived.

39. The 2021 Settlement Agreement required Kirshenboim to refrain from any use of the UGLY HOUSES marks (or confusingly similar marks).

40. Kirshenboim has materially breached the 2021 Settlement Agreement. As explained above, Defendants have used the UGLY HOUSES marks and confusingly similar marks to advertise his businesses: Chris Buys Homes, KI Properties, and ZRE.

41. HomeVestors has been damaged and seeks all remedies to which it may be entitled, including (but not limited to) monetary damages, declaratory and injunctive relief, and attorneys' fees and costs.

### B. COUNT II: Breach of Contract against Chris Buys Homes, KI Properties, and ZRE

42. HomeVestors realleges and incorporated by reference the allegations set forth in all proceeding paragraphs.

43. HomeVestors has performed all of its obligations under the 2025 Settlement Agreement, and all conditions precedent to Chris Buys Homes, KI Properties, and ZRE's performance have been performed, will be performed, or have been waived.

44. The Settlement Agreement required Chris Buys Homes, KI Properties, and ZRE's to refrain from any use of the UGLY HOUSES marks (or confusingly similar marks).

45. Chris Buys Homes, KI Properties, and ZRE's have materially breached the 2025 Settlement Agreement. As explained above, Chris Buys Homes, KI Properties, and ZRE have used the UGLY HOUSES marks and confusingly similar marks to advertise their business.

46. HomeVestors has been damaged and seeks all remedies to which it may be entitled, including (but not limited to) monetary damages, declaratory and injunctive relief, and attorneys' fees and costs.

## C. COUNT III: Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114

47. HomeVestors realleges and incorporated by reference the allegations set forth in all proceeding paragraphs.

48. HomeVestors is the owner of valid and subsisting U.S. registrations for the UGLY HOUSES Marks identified above.

49. Defendants' wrongful and unauthorized use in commerce of the UGLY HOUSES marks to promote, market or sell their franchising and/or real estate services constitutes trademark infringement under 15 U.S.C. § 1114, as it is likely to cause confusion, mistake or deception.

50. Defendants' intentional and willful infringement of the UGLY HOUSES marks has caused, and will continue to cause, damage to HomeVestors, and is causing irreparable harm to HomeVestors for which there is no adequate remedy at law. Therefore, HomeVestors is entitled to injunctive relief against Defendants.

51. HomeVestors is entitled to recover Defendants' profits, its actual damages, and the costs of this action. HomeVestors is further entitled to recover treble damages and attorneys' fees under 15 U.S.C. § 1117, as this is an exceptional case due to Defendants' willful conduct.

## D. COUNT IV: False Designation of Origin and Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125(c)

52. HomeVestors realleges and incorporates by reference the allegations set forth in the

preceding paragraphs.

53. HomeVestors is the owner of valid U.S. registrations for the UGLY HOUSES marks identified above.

54. The UGLY HOUSES marks are distinctive marks that are associated with HomeVestors and exclusive identify HomeVestors' business and services.

55. Defendants have used, and continue to use, in commerce one or more words, terms, names, symbols, devices, designs and combinations thereof and/or false descriptions of origin that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with HomeVestors and/or as to the origin, sponsorship, or approval of the services and products and commercial activities of Defendants, and thus constitute trademark infringement, false designation of origin, and unfair competition with respect to the UGLY HOUSES marks, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

56. The actions of Defendants described above have at all times relevant to this action been willful and intentional.

57. As a result of Defendants' actions, HomeVestors has been damaged and will continue to be damaged. HomeVestors is entitled to recover Defendants' profits, its actual damages, and the costs of this action. HomeVestors is further entitled to recover treble damages and attorneys' fees under 15 U.S.C. § 1117, as this is an exceptional case due to Defendants' willful conduct.

**E. COUNT V: Dilution under the Lanham Act, 15 U.S.C. § 1125**

58. HomeVestors realleges and incorporated by reference the allegations set forth in all proceeding paragraphs.

59. Based at least on the distinctiveness of the UGLY HOUSES marks, the duration

and extent of advertising featuring the UGLY HOUSES marks, the geographic area in which HomeVestors franchisees advertise their real estate-related services under the UGLY HOUSES marks, the nature of the trade channels used to market such real estate-related services under the UGLY HOUSES marks compared to the trade channels through which Defendants' market, intend to market, or are likely to market their services, the degree of public recognition of the UGLY HOUSES marks, and HomeVestors' numerous federal registrations for the UGLY HOUSES marks, the UGLY HOUSES marks have become famous, as that term is used in Section 43(c) of the Lanham Act, and have been famous for years.

60. Defendants' actions described above, all occurring after the UGLY HOUSES marks became famous are likely to cause dilution of the famous UGLY HOUSES marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C.A. § 1125(c).

61. HomeVestors has sustained damage as a direct and proximate result of Defendants' dilution in an amount to be proven at trial.

## APPLICATION FOR PERMANENT INJUNCTION

62. HomeVestors realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

63. Defendants, unless enjoined, will continue to misrepresent to or mislead the public into believing that their services are sponsored by, approved by, affiliated with, associated with, or originated by HomeVestors. Defendants will continue to infringe the UGLY HOUSES marks by using those marks or confusingly similar variations, to identify Defendants' competitive franchising and real estate services in violation of the Lanham Act.

64. These actions entitle HomeVestors to a permanent injunction, upon hearing, enjoining Defendants and their officers, agents, servants, employees, franchisees, and attorneys,

and all persons in active concert or in participation with Defendants from:

(a) Representing Defendants' services are in any way sponsored by, approved by, affiliated with, or originated by HomeVestors;

(b) Using any of the UGLY HOUSES marks or any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name, name component, domain name or domain name component, source codes, trade dress, or to otherwise market, advertise, or identify Defendants' services; and

(c) Otherwise competing unfairly with HomeVestors or injuring its business reputation in any manner.

65. For these actions, there is no adequate remedy at law. HomeVestors is therefore entitled to permanent injunctive relief against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, HomeVestors respectfully prays that the Court enter judgment in its favor on each and every claim for relief set forth above and award it relief against Defendants including, but not limited to:

(1) Actual, treble, and exemplary damages;

(2) In accordance with 15 U.S.C. § 1116, a permanent injunction enjoining Defendants and Defendants' officers, agents, servants, employees, franchisees, if any, and attorneys, and all persons in active concert or participation with Defendants from the acts described in this Complaint;

(3) An order requiring Defendants and Defendants' officers, agents, servants, employees, franchisees, if any, and attorneys, and all persons in active concert or participation with Defendants to identify all third parties to whom Defendants have represented an ownership, affiliation, association, or sponsorship with the UGLY HOUSES marks and to whom Defendants have distributed any type of materials incorporating the UGLY HOUSES marks;

(4) An order requiring Defendants and Defendants' officers, agents, servants, employees, franchisees, if any, and attorneys, and all persons in active concert or participation with Defendants to identify all other advertisements containing the UGLY HOUSES marks;

(5) An order requiring Defendants to provide an accounting of all sales, revenues, and profits related to Defendants' services that infringe the UGLY HOUSES marks and

that are falsely designated as being sponsored by, approved by, affiliated with, or associated with HomeVestors;

(6) In accordance with 15 U.S.C. § 1118, an order that all materials in Defendants' possession or control bearing the UGLY HOUSES marks be surrendered for destruction;

(7) In accordance with 15 U.S.C. §§ 1117(a) and (d), award HomeVestors all of Defendants' profits from the aforesaid acts of trademark infringement, and unfair competition;

(8) In accordance with 15 U.S.C. §§ 1117(b) and (c), award HomeVestors the maximum statutory damages for Defendants' counterfeiting of the UGLY HOUSES marks.

(9) In accordance with 15 U.S.C. § 1117(a), find this case to be exceptional in HomeVestors' favor and award HomeVestors its reasonable attorney's fees, costs, and expenses of this action;

(10) Award HomeVestors its costs and pre-judgment and post-judgment interest at the maximum allowable interest rate;

(11) An order requiring that Defendants must file with the Court and serve on HomeVestors' counsel within 30 days after entry of the injunction, a written report, sworn under oath, setting forth in detail the manner and form in which Defendants has complied with the injunction; and

(12) Grant HomeVestors such other relief, at law or in equity, to which it is justly entitled.

Dated: February 23, 2026

Respectfully submitted:

**HOLLAND & KNIGHT LLP**

By: */s/ Justin S. Cohen*
**Justin S. Cohen**
Texas Bar No. 24078356
Justin.Cohen@hklaw.com
**Morgan J. Delabar**
Texas Bar No. 24116625
Morgan.Delabar@hklaw.com

One Arts Plaza
1722 Routh St., Suite 1500
Dallas, Texas 75201
214.969.1700
*Attorneys for HomeVestors of America, Inc.*